UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NIKITA WATKINS,                                    :

                     Plaintiff,         :            14 Civ. 7504 (AJP)

          -against-                        :            **OPINION & ORDER**

DETECTIVE ROCCO RUSCITTO and              :
DETECTIVE JOHN GENGO,
                                   :
                 Defendants.
                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

        Pro se plaintiff Nikita Watkins brings this action pursuant to 42 U.S.C. § 1983,

alleging that her constitutional rights were violated by defendants in connection with two arrests in

2013.  (Dkt. No. 17: 2d Am. Compl.)  Presently before the Court is defendants' summary judgment

motion.  (Dkt. No. 49: Notice of Mot.)  Watkins has not responded to the motion, and the time to

do so has passed.  (See Dkt. No. 48.)  The parties have consented to decision of this motion by a

Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Dkt. No. 44.)

        For the reasons set forth below, defendants' summary judgment motion is

GRANTED.

## FACTS

### Watkins' Complaint

        Watkins' claims arise from arrests on March 13, 2013 and May 1, 2013.  (Dkt. No.

17: 2d Am. Compl. ("SAC").)  On both occasions, Watkins was arrested by N.Y.P.D. Detectives

John Gengo and Rocco Ruscitto.  (SAC § III(C).)  Watkins asserts that subsequent to the arrests, she

2

suffers from insomnia and anxiety, and requires sleep aids and anti-anxiety medication.  (SAC § IV; see also Dkt. No. 51: Noble Aff. Ex. L: Watkins Dep. at 78, 82, 94.)[1]  Watkins seeks monetary compensation for her psychological injuries.  (SAC § V.)

**Watkins' March 13, 2013 Arrest**

On March 2, 2013, N.Y.P.D. Detective Pedro Ramos was assigned to investigate a complaint made by victim Shoshanna Morgan.  (Dkt. No. 53: Defs. 56.1 Stmt. ¶ 10; Ex. H: 3/13/13 Compl. Report at 1; Ex. J: Ramos Aff. ¶ 3.)  Morgan told Detective Ramos in a March 3, 2013 interview that Watkins called her and threatened: "'I will shoot you in the face when I see you!'" (Defs. 56.1 Stmt. ¶ 11; Ramos Aff. ¶ 4; 3/13/13 Compl. Report at 5.)  Morgan further stated that Watkins made unsolicited visits to the shelter where Morgan lived, and told Morgan that she would be waiting outside.  (Defs. 56.1 Stmt. ¶ 11; Ramos Aff. ¶ 4; 3/13/13 Compl. Report at 5.)

Det. Ramos requested information from the Department of Homeless Services, and determined that Watkins lived in a shelter at 730 Kelly Street in the Bronx.  (Defs. 56.1 Stmt. ¶ 12; Ramos Aff. ¶ 5; 3/13/13 Compl. Report at 8, 10.)  Based on the investigation, Det. Ramos believed that probable cause existed to arrest Watkins for second degree aggravated harassment, Penal Law § 240.30(02).  (Defs. 56.1 Stmt. ¶ 13; Ramos Aff. ¶ 6.)  On March 11, 2013, consistent with N.Y.P.D. procedure, Det. Ramos activated an investigation card for Watkins' arrest.  (Defs. 56.1 Stmt. ¶ 14; Ramos Aff. ¶ 7; 3/13/13 Compl. Report at 14.)

On March 12, 2013, Detectives Gengo and Ruscitto were assigned to arrest Watkins. (Defs. 561. Stmt. ¶ 15; Ramos Aff. ¶ 8; 3/13/13 Compl. Rep. at 15-16.)  On March 13, 2013, at 7:40 a.m., they went to 730 Kelly Street and knocked on the door of Watkins' unit.  (Defs. 56.1 Stmt. ¶

---

[1]      Unless otherwise indicated, all references to exhibits are to those attached to the May 20, 2016 affidavit of Alexander Noble.  (Dkt. No. 51.)

17; Ex. L: Watkins Dep. at 30-31.)  Watkins and her infant son had been sleeping, and she opened the door in her undergarments.  (Watkins Dep. at 32; Defs. 56.1 Stmt. ¶ 18.)  Detectives Gengo and Ruscitto told Watkins that they needed to enter her room, and when she protested that she was in her underwear, they said it did not matter.  (Watkins Dep. at 32; Defs. 56.1 Stmt. ¶ 19.)  Watkins asked if she could get dressed in the bathroom across the hall from her unit, but the detectives would not allow her to leave her room and asked her to pull her bra away from her body and shake it to see if she had hidden drugs or weapons.  (Watkins Dep. at 36, 45-46; Defs. 56.1 Stmt. ¶ 23.)  Watkins complied, but felt "sexually uncomfortable."  (Watkins Dep. at 46.)

Detectives Gengo and Ruscitto searched Watkins' unit (Watkins Dep. at 36; Defs. 56.1 Stmt. ¶ 22), and then escorted Watkins and her child from the shelter to their car (Watkins Dep. at 48; Defs. 56.1 Stmt. ¶¶ 28-29).  Watkins states that one of the detectives grabbed her arm (Watkins Dep. at 47), but she was not handcuffed because she was carrying her son (Watkins Dep. at 43).  Detectives Gengo and Ruscitto brought Watkins to the precinct, after which she had no further contact with them in connection with this arrest.  (Watkins Dep. at 49-50; Defs. 56.1 Stmt. ¶ 30.)

Detective Cliff Acosta questioned Watkins about her contact with Morgan.  (Watkins Dep. at 49-50; Defs. 56.1 Stmt. ¶ 32.)  Watkins acknowledged that she and Morgan had an altercation in February 2013, when they both lived in the same shelter.  (Watkins Dep. at 49-50; Defs. 56.1 Stmt. ¶ 33.)  Watkins denied threatening Morgan, but stated that she had called her in an attempt to "squash th[e] beef."  (Watkins Dep. at 66, 70; Defs. 56.1 Stmt. ¶ 33.)

That same day, March 13, 2013, Morgan executed a criminal affidavit, attesting that on March 2, 2013, Watkins called her, threatened to shoot her in the face, hung up, and called back to say that she was coming to Morgan's shelter to fight her.  (Ex. N: 3/13/13 Morgan Criminal Aff.)

Morgan further stated that she knew Watkins, and recognized her voice on the telephone. (3/13/13 Morgan Criminal Aff.) Watkins' calls caused Morgan "annoyance, alarm, and fear for her physical safety." (3/13/13 Morgan Criminal Aff.)

Watkins was taken to Bronx Central Booking, and arraigned in Bronx County Criminal Court on three counts of second degree aggravated harassment. (Watkins Dep. at 56, 58; Defs. 56.1 Stmt. ¶¶ 34-35.) At Watkins' arraignment, Judge Stephen Hornstein issued an Order of Protection, valid through May 8, 2013, ordering Watkins to stay away from and refrain from communicating with Morgan. (Ex. O: 3/13/13 Order of Protection.) The Order of Protection stated that failure to obey its terms might "result in mandatory arrest and criminal prosecution which may result in . . . incarceration for up to seven years for contempt of court." (3/13/13 Order of Protection.) Watkins signed the Order before she was released. (Watkins Dep. at 99; 3/13/13 Order of Protection at 1; Defs. 56.1 Stmt. ¶ 40.)

**Watkins' May 1, 2013 Arrest**

On April 23, 2013, Morgan told N.Y.P.D. Officer Gregory King that Watkins had contacted her and threatened to kill her, in violation of an outstanding Order of Protection. (Ex. I: 5/1/13 Compl. Report at 1, 15; Defs. 56.1 Stmt. ¶¶ 42-43.) Detective Thomas Farrell was assigned to investigate Morgan's complaint. (Ex. P: Farrell Aff. ¶ 4; Defs. 56.1 Stmt. ¶ 45.) On April 24, 2013, Det. Farrell conducted a computer check that revealed two prior criminal complaints by Morgan against Watkins for menacing and aggravated harassment. (5/1/13 Compl. Report at 6; Farrell Aff. ¶ 5; Defs. 56.1 Stmt. ¶ 46.) The following day, Det. Farrell confirmed that Morgan had a valid Order of Protection against Watkins, and that the Order had been served on Watkins in court. (5/1/13 Compl. Report at 10; Farrell Aff. ¶ 6; Defs. 56.1 Stmt. ¶ 47-49.) Based on Morgan's complaint, and the active Order of Protection, Det. Farrell concluded that there existed probable

cause to arrest Watkins for second degree aggravated harassment.  (Farrell Aff. ¶ 7; Defs. 56.1 Stmt. ¶ 50.)  Consistent with N.Y.P.D. practice, Farrell created an investigation card for Watkins' arrest.  (5/1/13 Compl. Report at 12; Farrell Aff. ¶ 8; Defs. 56.1 Stmt. ¶ 51.)

Detectives Gengo and Ruscitto again were assigned to arrest Watkins.  (Defs. 56.1 Stmt. ¶ 52; 5/1/13 Compl. Rep. at 17; Farrell Aff. ¶ 9.)  On May 1, 2013, they went to 730 Kelly Avenue at 7:40 a.m, and arrested Watkins for second degree aggravated harassment and second degree criminal contempt.  (5/1/13 Compl. Report at 17-18; Farrell Aff. ¶ 10; Defs. 56.1 Stmt. ¶¶ 53, 62.)  Watkins claims that the detectives "did the same thing" as on March 13, 2013 – entered her unit, searched it and the hallway bathroom, would not allow her to go to the bathroom or get dressed in private, and escorted her out of the shelter.  (Ex. L: Watkins Dep. at 111-13; Defs. 56.1 Stmt. ¶¶ 54-57.)  Watkins was rear cuffed and taken to the precinct (Watkins Dep. at 114; Defs. 56.1 Stmt. ¶ 58), after which she had no further interaction with Detectives Gengo and Ruscitto (Watkins Dep. at 117, Defs. 56.1 Stmt. ¶ 63).

On the afternoon of Watkins' arrest, Det. Farrell interviewed Morgan.  (Farrell Aff. ¶ 11; Defs. 56.1 Stmt. ¶ 59.)  Morgan stated that Watkins called her twenty-seven times in violation of the Order of Protection, and threatened: "'I will go to your shelter and murder you.'" (Farrell Aff. ¶ 11; 5/1/13 Compl. Report at 19.)  Morgan confirmed that she recognized Watkins' voice (5/1/13 Compl. Report at 19), and identified Watkins in a photograph (Farrell Aff. ¶ 12; Defs. 56.1 Stmt. ¶ 60).

## ANALYSIS

## I.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Humphreys v. Cablevision Sys. Corp., 553 F. App'x 13, 14 (2d Cir. 2014); Connolly v. Calvanese, 515 F. App'x 62, 62 (2d Cir. 2013); Lang v. Ret. Living Publ'g Co., 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Alzawahra v. Albany Med. Ctr., 546 F. App'x 53, 54 (2d Cir. 2013); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53; Dolan v. Cassella, 543 F. App'x 90, 90 (2d Cir. 2013).

To defeat a summary judgment motion, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986)). Instead, the non-moving party must "cit[e] to particular parts of materials in the record" to show that "a fact . . . is genuinely disputed." Fed. R. Civ. P. 56(c)(1); see, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356; Alzawahra v. Albany Med. Ctr., 2013 WL 6284286 at *1; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (at summary judgment, "[t]he time has come . . . 'to put up or shut up'"), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003).

In evaluating the record to determine whether there is a genuine issue as to any

material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[2/] The Court draws all inferences in favor of the non-moving party only after determining that such inferences are reasonable, considering all the evidence presented.  See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper."  Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact.  See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248, 106 S. Ct. at 2510 (citations omitted); see also, e.g., Knight v. U.S. Fire Ins. Co., 804 F.2d at 11-12.

"The Court recognizes that it must extend extra consideration to pro se plaintiffs" and that "pro se parties are to be given special latitude on summary judgment motions."  Salahuddin v.

---

[2/]   See also, e.g., Crown Castle NG E. Inc. v. Town of Greenburgh, N.Y., 552 F. App'x 47, 49 (2d Cir. 2014); Alzawahra v. Albany Med. Ctr., 2013 WL 6284286 at *1; Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.

8

Coughlin, 999 F. Supp. 526, 535 (S.D.N.Y. 1998) (Peck, M.J.) (citations & internal quotations omitted); see, e.g., McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (a pro se party's pleadings should be read liberally and interpreted "'to raise the strongest arguments that they suggest'").[3/] "Nevertheless, proceeding pro se does not otherwise relieve a litigant from the usual requirements of summary judgment, and a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Cole v. Artuz, 93 Civ. 5981, 1999 WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999) (citing cases).[4/]

## II.    DETECTIVES GENGO & RUSCITTO ARE GRANTED SUMMARY JUDGMENT AS TO WATKINS' § 1983 FALSE ARREST CLAIM

Watkins asserts a false arrest claim under 42 U.S.C. § 1983.  (Dkt. No. 17: SAC § III(C).)  Detectives Gengo and Ruscitto assert that Watkins' claim is meritless, as they had probable cause to arrest her on each occassion.  (Dkt. No. 54: Defs. Br. at 3-12.)

### A.    Legal Standard Governing False Arrest Claims

To prevail in a § 1983 action, a plaintiff must demonstrate that she has been denied

---

[3/]    See also, e.g., Ferran v. Town of Nassau, 471 F.3d 363, 369 (2d Cir. 2006); Fuller v. Armstrong, 204 F. App'x 987, 988 (2d Cir. 2006), cert. denied, 552 U.S. 906, 128 S. Ct. 209 (2007); Gildor v. U.S. Postal Serv., 179 F. App'x 756, 758 (2d Cir. 2006); Porter v. Coughlin, 421 F.3d 141, 144 n.2 (2d Cir. 2005); Hemphill v. New York, 380 F.3d 680, 687 (2d Cir. 2004); Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003); Johnson v. Buffalo Police Dep't, 46 F. App'x 11, 12 (2d Cir. 2002), cert. denied, 539 U.S. 959, 123 S. Ct. 2645 (2003).

[4/]    See also, e.g., United States v. Acomb, No. 99-6308, 216 F.3d 1073 (table), 2000 WL 899482 at *1 (2d Cir. June 29, 2000); James v. Phillips, 05 Civ. 1539, 2008 WL 1700125 at *3 (S.D.N.Y. Apr. 9, 2008); Thompson v. Tracy, 00 Civ. 8360, 2008 WL 190449 at *5 (S.D.N.Y. Jan. 17, 2008); Bunting v. Nagy, 452 F. Supp. 2d 447, 454 (S.D.N.Y. 2006); Rodriguez v. McClenning, 399 F. Supp. 2d 228, 234 & n.52 (S.D.N.Y. 2005); Pack v. Artuz, 348 F. Supp. 2d 63, 78 (S.D.N.Y. 2004); Rector v. Sylvania, 285 F. Supp. 2d 349, 353 (S.D.N.Y. 2003); Walker v. Vaughan, 216 F. Supp. 2d 290, 296-97 (S.D.N.Y. 2002); Hussein v. The Waldorf-Astoria, 134 F. Supp. 2d 591, 596 (S.D.N.Y. 2001), aff'd, 31 F. App'x 740 (2d Cir. 2002).

a constitutional or federal statutory right and that the deprivation occurred under color of state law. See 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988).  "Section 1983 itself," however, "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted), cert. denied, 512 U.S. 1240, 114 S. Ct. 2749 (1994); see, e.g., Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist., 423 F.3d 153, 159 (2d Cir. 2005); Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999).[5/]

"It is now far too late in our constitutional history to deny that a person has a clearly established right not to be arrested without probable cause."  Cook v. Sheldon, 41 F.3d 73, 78 (2d Cir. 1994); accord, e.g., Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997).

"'A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law.'"  Covington v. City of N.Y., 171 F.3d 117, 122 (2d Cir.) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)), cert. denied, 528 U.S. 946, 120 S. Ct. 363 (1999).[6/]

"Under New York state law, to prevail on a claim of false arrest a plaintiff must show

---

[5/]    See also, e.g., Santiago v. Pressley, 10 Civ. 4797, 2011 WL 6748386 at *2 (S.D.N.Y. Dec. 23, 2011); Elliott v. City of N.Y., 06 Civ. 0296, 2008 WL 4178187 at *7 (S.D.N.Y. Sept. 8, 2008); Hill v. Melvin, 05 Civ. 6645, 2006 WL 1749520 at *10 (S.D.N.Y. June 27, 2006) (Peck, M.J.), aff'd, 323 F. App'x 61 (2d Cir. 2009); Ramashwar v. Espinoza, 05 Civ. 2021, 2006 WL 23481 at *6 (S.D.N.Y. Jan. 5, 2006) (Peck, M.J.), aff'd, 231 F. App'x 26 (2d Cir. 2007).

[6/]    See also, e.g., Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013); Jenkins v. City of N.Y., 478 F.3d 76, 84 (2d Cir. 2007); Boyd v. City of N.Y., 336 F.3d 72, 75 (2d Cir. 2003); Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003); Caldarola v. Calabrese, 298 F.3d 156, 161 (2d Cir. 2002); Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992).

that '(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement,

(3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise

privileged.'" Jocks v. Tavernier, 316 F.3d at 134-35 (quoting Broughton v. State, 37 N.Y.2d 451,

456, 373 N.Y.S.2d 87, 93 (N.Y.), cert. denied, 423 U.S. 929, 96 S. Ct. 277 (1975)).[7]

      "Under New York law, the existence of probable cause is an absolute defense to a

false arrest claim." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006).[8]  "Probable cause to arrest

exists when the arresting officer has 'knowledge or reasonably trustworthy information of facts and

circumstances that are sufficient to warrant a person of reasonable caution in the belief that the

person to be arrested has committed or is committing a crime.'" Escalera v. Lunn, 361 F.3d at 743

---

[7]    See, e.g., Golio v. Suggs, 285 F. App'x 773, 774-75 (2d Cir. 2008); Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004); Covington v. City of N.Y., 171 F.3d at 122 ("Under New York law, 'a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined him without his consent and without justification.'" (quoting Weyant v. Okst, 101 F.3d at 852)); Marshall v. Sullivan, 105 F.3d 47, 50 (2d Cir. 1996); Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995), cert. denied, 517 U.S. 1189, 116 S. Ct. 1676 (1996).

[8]    Accord, e.g., Gonzalez v. City of Schenectady, 728 F.3d at 155;  Alvarado v. City of N.Y., 453 F. App'x 56, 58 (2d Cir. 2011); Jean v. Montina, 412 F. App'x 352, 353 (2d Cir. 2011); Jenkins v. City of N.Y., 478 F.3d at 84; Escalera v. Lunn, 361 F.3d at 743; Caldarola v. Calabrese, 298 F.3d at 161; Kent v. Katz, 312 F.3d 568, 573 (2d Cir. 2002); Covington v. City of N.Y., 171 F.3d at 121; Marshall v. Sullivan, 105 F.3d at 50; Weyant v. Okst, 101 F.3d at 852; Singer v. Fulton Cty. Sheriff, 63 F.3d at 118 ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."); Bernard v. United States, 25 F.3d 98, 102, 104 (2d Cir. 1994) ("the existence of [probable cause] is a complete defense to an action for false arrest"); Fox v. City of N.Y., 03 Civ. 2268, 2004 WL 856299 at *4-5 (S.D.N.Y. Apr. 20, 2004);  Greenfield v. City of N.Y., 99 Civ. 2330, 2000 WL 124992 at *5 (S.D.N.Y. Feb. 3, 2000) (Peck, M.J.); Shaw v. City of N.Y., 95 Civ. 9325, 1997 WL 187352 at *3 (S.D.N.Y. Apr. 15, 1997) (Peck, M.J.); Miloslavsky v. AES Eng'g Soc'y, Inc., 808 F. Supp. 351, 354 (S.D.N.Y. 1992) ("under New York law, 'probable cause serves as a complete defense to the charges of false arrest and malicious prosecution'"), aff'd, 993 F.2d 1534 (2d Cir.), cert. denied, 510 U.S. 817, 114 S. Ct. 68 (1993).

(quoting <u>Weyant</u> v. <u>Okst</u>, 101 F.3d at 852).[9/]   "Defenses which negate the existence of a crime should similarly negate probable cause" for an arrest.   <u>Jocks</u> v. <u>Tavernier</u>, 316 F.3d at 135.

### B.   Detectives Gengo & Ruscitto Had Probable Cause to Arrest Watkins

Detectives Gengo and Ruscitto argue that Morgan's complaints established probable cause for Watkins' arrests.   (Dkt. No. 54: Defs. Br. at 6-8, 10-12.)

"'Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" <u>Torraco</u> v. <u>Port Auth. of N.Y. & N.J.</u>, 615 F.3d 129, 139 (2d Cir. 2010); <u>see also</u> cases cited on page 10 above & n.9 below.   "'When determining whether probable cause exists courts must consider those facts <u>available to the officer</u> at the time of the arrest and immediately before it,' as '[p]robable cause does not require absolute certainty.'"   <u>Panetta</u> v. <u>Crowley</u>, 460 F.3d 388, 395 (2d Cir. 2006) (citation omitted).[10/]   Additionally, "[c]ourts should look to the 'totality of the circumstances' and 'must be aware that probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of

---

[9/]   Accord, <u>e.g.</u>, <u>Gonzalez</u> v. <u>City of Schenectady</u>, 728 F.3d at 155; <u>Alvarado</u> v. <u>City of N.Y.</u>,453 F. App'x at 58; <u>Torraco</u> v. <u>Port Auth. of N.Y. & N.J.</u>, 615 F.3d 129, 139 (2d Cir. 2010); <u>Jenkins</u> v. <u>City of N.Y.</u>, 478 F.3d at 84; <u>Jaegly</u> v. <u>Couch</u>, 439 F.3d at 152; <u>Boyd</u> v. <u>City of N.Y.</u>, 336 F.3d at 75-76; <u>Caldarola</u> v. <u>Calabrese</u>, 298 F.3d at 162; <u>Curley</u> v. <u>Vill. of Suffern</u>, 268 F.3d 65, 70 (2d Cir. 2001); <u>Marshall</u> v. <u>Sullivan</u>, 105 F.3d at 54.

[10/]   Accord, e.g., <u>Mathis</u> v. <u>Marshall</u>, 08 Civ. 3991, 2012 WL 388539 at *28 (S.D.N.Y. Jan. 30, 2012) ("The probable cause determination must be made by looking at 'what the officer knew at the time of the arrest and whether the officer was reasonable in relying on that knowledge.'"), <u>R. & R. adopted</u>, 2012 WL2739873 (S.D.N.Y. July 9, 2012); <u>Castro</u> v. <u>Cty. of Nassau</u>, 739 F. Supp. 2d 153, 167 (E.D.N.Y. 2010); <u>Bryant</u> v. <u>Crowe</u>, 697 F. Supp. 2d 482, 488 (S.D.N.Y. 2010).

legal rules.'" <u>Panetta</u> v. <u>Crowley</u>, 460 F.3d at 395.[11] "'When information is received from a putative victim or an eyewitness, probable cause exists unless the circumstances raise doubt as to the person's veracity.'" <u>Feehan</u> v. <u>Lengyel</u>,  278 F. App'x 47, 49 (2d Cir. 2008).[12]

Probable cause to arrest may exist even if the arresting officers do not possess first-hand knowledge of the suspect's alleged criminal activity.  <u>See, e.g.,</u> <u>Zellner</u> v. <u>Summerlin</u>, 494 F.3d 344, 369 (2d Cir. 2007) ("The existence of probable cause need not be assessed on the basis of the knowledge of a single officer.").  Under the collective knowledge doctrine or "fellow officer" rule, arresting officers do not need to independently determine that probable cause exists as long as the officer ordering the arrest possesses sufficient probable cause to direct it.  <u>See, e.g.,</u> <u>United States</u> v. <u>Colon</u>, 250 F.3d 130, 135 (2d Cir. 2001) ("Under the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation." (citing cases)); <u>Johnson</u> v. <u>City of N.Y.</u>, 11 Civ. 4435, 2014 WL 3579796 at *4 (S.D.N.Y July 18, 2014) ("'The fellow officer rule provides that even if an arresting officer lacks personal knowledge sufficient to establish probable cause, the arrest will be lawful if the

---

[11]     <u>Accord, e.g.,</u> <u>Felmine</u> v. <u>City of N.Y.</u>, No. 09-CV-3768, 2011 WL 4543268 at *7 (E.D.N.Y. Sept. 29, 2011); <u>Bryant</u> v. <u>Crowe</u>, 697 F. Supp. 2d at 490; <u>Celestin</u> v. <u>City of N.Y.</u>, 581 F. Supp. 2d 420, 430 (E.D.N.Y. 2008)

[12]     <u>Accord, e.g.,</u> <u>Keith</u> v. <u>City of N.Y.</u>, No. 14-4788, 2016 WL 860376 at *1 (2d Cir. Mar. 7, 2016); <u>Lebowitz</u> v. <u>City of N.Y.</u>, 606 F. App'x 17, 18 (2d Cir. 2015); <u>Lederman</u> v. <u>Benepe</u>, 12 Civ. 6028, 2014 WL 1318356 at *11 (S.D.N.Y. Mar. 28, 2014); <u>Awelewa</u> v. <u>New York City</u>, 11 Civ. 778, 2012 WL 601119 at *3 (S.D.N.Y. Feb. 23, 2012); <u>White</u> v. <u>Bellnier</u>, No. 09-CV-744, 2011 WL 6780995 at *9 (E.D.N.Y. Dec. 27, 2011); <u>Jones</u> v. <u>King</u>, 10 Civ. 0897, 2011 WL 4484360 at *7 (S.D.N.Y. Sept. 28, 2011); <u>Guthrie</u> v. <u>U.S. Gov't</u>, 11 Civ. 211, 2011 WL 832251 at *3 (S.D.N.Y. Mar. 2, 2011).

officer acts upon the direction of or as a result of communication with a superior or [fellow] officer
. . . provided that the police as a whole were in possession of information sufficient to constitute
probable cause to make the arrest.'" (quotation & citation omitted)), R. & R. adopted, 2014 WL
3854137 (S.D.N.Y. Aug. 5, 2014).

        Thus, the collective knowledge doctrine ascribes the knowledge of one officer to all
other officers involved in the same case for the purposes of establishing probable cause.  See, e.g.,
Savino v. City of N.Y., 331 F.3d 63, 74 (2d Cir. 2003) ("The collective knowledge doctrine provides
that, for the purpose of determining whether an arresting officer had probable cause to arrest, 'where
law enforcement authorities are cooperating in an investigation, . . . the knowledge of one is
presumed shared by all.'" (quoting Illinois v. Andreas, 463 U.S. 765, 771 n.5, 103 S. Ct. 3319, 3324
n.5 (1983))); Golphin v. City of N.Y., 09 Civ. 1015, 2011 WL 4375679 at *2 (S.D.N.Y. Sept. 19,
2011) ("[T]he collective knowledge doctrine . . . imputes all information known to an officer to all
other officers involved in the same investigation.").  Because police work requires officers to rely
upon the truth of information provided by their colleagues, when an officer is acting based upon the
knowledge of a fellow officer, "the proper inquiry is whether the arresting officer acted reasonably,
as opposed to whether probable cause actually existed or the vouching officer acted reasonably."
Golphin v. City of N.Y., 2011 WL 4375679 at *2; see also, e.g., United States v. Valez, 796 F.2d
24, 28 (2d Cir. 1986), cert. denied, 479 U.S. 1067, 107 S. Ct. 957 (1987).

     **1.**      **Watkins' March 13, 2013 Arrest**

        Detective Ramos interviewed Morgan on March 3, 2013 about her interactions with
Watkins.  (See page 2 above.)  Morgan reported that she received unsolicited visits and a phone call
from Watkins during which Watkins threatened, "I will shoot you in the face when I see you!"  (See
page 2 above.)  As an alleged victim, Morgan's statements to the police could be assumed accurate

and reliable.  (See cases cited at page 12 & n.12 above.)  There is no evidence to suggest that Detective Ramos had reason to doubt the veracity of Morgan's complaint.  Accordingly, Morgan's complaint provided Detective Ramos with probable cause to arrest Watkins for second degree aggravated harassment.  See Penal Law § 240.30(1)(a) (making it a misdemeanor to communicate with intent to harass "by telephone . . . a threat to cause physical harm").[13]

It is undisputed that based on Detective Ramos' finding of probable cause, he activated the investigation card upon which Detectives Gengo and Ruscitto acted.  (See page 2 above.)  Pursuant to the "fellow officer" rule, Detectives Gengo and Ruscitto were entitled to rely on Detective Ramos' determination that probable cause existed to arrest Watkins.  (See cases cited at pages 12-13 above.)  Accordingly, probable cause existed to arrest Watkins, and defendants acted reasonably in relying on Detective Ramos.  Watkins' March 13, 2013 arrest thus does not give rise to a § 1983 claim for false arrest.

**2.    Watkins' May 1, 2013 Arrest**

On April 23, 2013, Morgan reported to the N.Y.P.D. that Watkins had again contacted and threatened to kill her, in violation of an existing Order of Protection.  (See page 4 above.)  Although Watkins contests the veracity of Morgan's complaint (Ex. L: Watkins Dep. at 79), Detective Farrell's investigation revealed Morgan's Order of Protection against Watkins, and gave him no reason to doubt Morgan's first-hand report that she was the victim of a crime.  (See page 4 above.)  Detective Farrell was justified in determining that probable cause existed to arrest Watkins for second degree aggravated harassment (Penal Law § 240.30(1)(a)) and first degree criminal

---

[13]  The Court acknowledges that the New York Court of Appeals struck down Penal Law § 240.30(1) as unconstitutionally vague since the time of Watkins' arrests.  See People v. Golb, 23 N.Y.3d 455, 466-68, 991 N.Y.S.2d 792, 801 (2014).  Nevertheless, the defendants' conduct is to be judged against the law at the time of Watkins' arrests.

contempt (Penal Law § 215.51(b)).  Based on the fellow officer rule, Detectives Gengo and Ruscitto

were entitled to rely on Detective Farrell's probable cause finding.  (See cases cited at pages 12-13

above.)  Accordingly, probable cause existed to arrest Watkins, and defendants acted reasonably in

relying on Detective Farrell.  Watkins' May 1, 2013 arrest thus does not give rise to a § 1983 claim

for false arrest.

## III.   DETECTIVES GENGO & RUSCITTO ARE GRANTED SUMMARY JUDGMENT AS TO WATKINS' § 1983 MALICIOUS PROSECUTION CLAIM

Detectives Gengo and Ruscitto argue that to the extent Watkins also may be asserting

a claim for malicious prosecution, such claim is without merit, as they had no personal involvement

in commencing criminal proceedings against her.  (Dkt. No. 54: Defs. Br. at 15-16.)

### A.   Legal Standard Governing Malicious Prosecution Claims

"The Second Circuit has held that '[f]reedom from malicious prosecution is a

constitutional right that has long been clearly established.'"  Winn v. McQuillan, 390 F. Supp. 2d

385, 389-90 (S.D.N.Y. 2005) (quoting Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003)).

"Claims for . . . malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth

Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for . . .

malicious prosecution under [New York] state law."  Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir.

2003).[14/]  To state a claim for malicious prosecution under New York law, the plaintiff must show:

(1) "the defendant initiated a criminal proceeding"; (2) the proceeding terminated in plaintiff's favor;

---

[14/]   See also, e.g., Hansel v. Brazell, 85 F. App'x 237, 238 (2d Cir. 2004); Boyd v. City of N.Y.,
336 F.3d 72, 75 (2d Cir. 2003); Savino v. City of N.Y., 331 F.3d 63, 72 (2d Cir. 2003);
Wims v. N.Y.C. Police Dep't, 10 Civ. 6128, 2011 WL 2946369 at *3 (S.D.N.Y. July 20,
2011); Anilao v. Spota, 774 F. Supp. 2d 457, 504 (E.D.N.Y. 2011); Pierre v. City of N.Y.,
No. 05-CV-5018, 2007 WL 2403573 at *8 (E.D.N.Y. Aug. 17, 2007); Winn v. McQuillan,
390 F. Supp. 2d at 390.

(3) "there was no probable cause for the criminal charge"; and (4) the defendant acted maliciously. Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004); see, e.g., Rentas v. Ruffin, 816 F.3d 214, 220 (2d Cir. 2016); Willey v. Kirkpatrick, 801 F.3d 51, 70 (2d Cir. 2015).[15]

        For a malicious prosecution claim to rise to a constitutional level under § 1983, there must also be a post-arraignment seizure.  Jocks v. Tavernier, 316 F.3d at 136; see also, e.g., Jean v. Montina, 412 F. App'x 352 at 354; Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 116-17 (2d Cir. 1995), cert. denied, 517 U.S. 1189, 116 S. Ct. 1676 (1996).  New York law "'places a heavy burden on malicious prosecution plaintiffs . . . .'"  Rothstein v. Carriere, 373 F.3d at 282.

    **B.**    **Detectives Gengo & Ruscitto Are Granted Summary Judgment as There is No Evidence that They Initiated Criminal Proceedings Against Watkins**

        To succeed on a malicious prosecution claim, a plaintiff must show that the defendant "'play[ed] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'"  Manganiello v. City of N.Y., 612 F.3d 149, 163 (2d. Cir. 2010).  A malicious-prosecution claim against the police "cannot stand if the decision made by the prosecutor to bring criminal charges was independent of any pressure exerted by [the] police."  Hartman v. Moore, 547 U.S. 250, 263, 126 S. Ct. 1695, 1705 (2006) (citing Dellums v. Powell, 566 F.2d 167, 192-193 (D.C. Cir. 1977), cert. denied, 438 U.S. 916, 98 S. Ct. 3146 (1978)).  "'In malicious prosecution cases brought against police officers, plaintiffs have demonstrated that officers initiated criminal proceedings by having the plaintiff arraigned, by filling out complaining and corroborating

---

[15]    See also, e.g., Jean v. Montina, 412 F. App'x 352, 354 (2d Cir. 2011); Hargroves v. City of N.Y., 411 F. App'x 378, 386 (2d Cir. 2011); Manganiello v. City of N.Y., 612 F.3d 149, 161 (2d Cir. 2010); Ramos v. City of N.Y., 298 F. App'x 84, 85 (2d Cir. 2008); Simmons v. N.Y.C. Police Dep't, 97 F. App'x 341, 342 (2d Cir. 2004); Hansel v. Brazell, 85 F. App'x at 238; Boyd v. City of N.Y., 336 F.3d at 76; Rohman v. N.Y.C. Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000).

affidavits, and by signing felony complaints.'"  Cooper v. City of N.Y., 12 Civ. 8008, 2013 WL
5493011 at *4 (S.D.N.Y. Oct. 2, 2013).  Further, "'[a]lthough there is a presumption that a
prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal
proceeding, an arresting officer may be held liable for malicious prosecution when a police officer
creates false information likely to influence a jury's decision and forwards that information to
prosecutors . . . or when [he or] she withholds relevant and material information.'"  Deanda v. Hicks,
137 F. Supp. 3d 543, 575 (S.D.N.Y. 2015); see also, e.g., Manganiello v. City of N.Y., 612 F.3d at
163 ("A jury may permissibly find that a defendant initiated a prosecution where he 'fil[ed] the
charges' or 'prepar[ed an] alleged false confession and forward[ed] it to prosecutors.'" (quoting
Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997))).

There is no evidence in the record to suggest that Detectives Gengo or Ruscitto
initiated or continued criminal proceedings against Watkins by signing a charging instrument,
having Watkins arraigned, or giving false information to or withholding relevant information from
the prosecutor.  Watkins acknowledges that after Detectives Gengo and Ruscitto delivered her to
the precinct, she had no further interaction with them in connection with either arrest.  (See pages
3, 5 above.)  As such, no reasonable juror could conclude that Detectives Gengo and Ruscitto
subjected Watkins to malicious prosecution.  See, e.g., Salvador v. City of N.Y., No. 15 Civ. 5164,
2016 WL 2939166 at *7 (S.D.N.Y. May 19, 2016) ("There is nothing to suggest that the officers
played an 'active role' in [plaintiff's] prosecution beyond the scope of their duties as arresting
officers. . . . [Plaintiff] does not allege that the police officers intentionally transmitted false
information to the prosecution or otherwise engaged in activities that would overcome the
presumption that the prosecution exercises independent judgment in prosecuting the defendant.");
Berry v. Marchinkowski, 137 F. Supp. 3d 495, 532 (S.D.N.Y. 2015) (Defendant officer "did not

bring formal charges, fill out a complaining or corroborating affidavit, or swear to or sign a felony complaint.  Nor is there any evidence that he created false information and gave it to prosecuting authorities.  Furthermore, there is no evidence that he induced [the prosecutor] to bring the criminal charges.  Thus, there is no evidence that can create a material issue of fact as to whether [defendant officer] initiated the prosecution, and he is therefore entitled to summary judgment on this claim."); Costello v. Milano, 20 F. Supp. 3d 406, 419 (S.D.N.Y. 2014) ("There is no evidence that [defendant officer] initiated Plaintiff's prosecution for any of the crimes with which Plaintiff was charged by, e.g., signing a charging instrument, discussing Plaintiff's prosecution with the DA's Office or involving himself in Plaintiff's prosecution in any other way.  Plaintiff's malicious prosecution claim against [defendant] must, therefore, be dismissed." (citation omitted)).

Accordingly, Watkins' malicious prosecution claim is dismissed.

## IV.   WATKINS' UNLAWFUL SEARCH CLAIM IS WITHOUT MERIT

Watkins asserts that upon each arrest Detectives Gengo and Ruscitto searched her room at the shelter and asked her to shake her bra for contraband.  (See pages 3, 5 above.)  To the extent Watkins' complaint thus can be read to state a claim for a warrantless search, such claim is without merit.

The search incident to arrest exception to the warrant requirement permits police officers to perform a search of a person in connection with a lawful arrest.  Riley v. California, 134 S. Ct. 2473, 2482-83 (2014); see also, e.g., United States v. Akefe, 568 F. App'x 1, 3 (2d Cir.), cert. denied, 135 S. Ct. 315 (2014). The Supreme Court has explained that the search incident to arrest doctrine "protect[s] arresting officers and safeguard[s] any evidence of the offense of arrest that an arrestee might conceal or destroy."  Arizona v. Gant, 556 U.S. 332, 339, 129 S. Ct. 1710, 1716 (2009).  Thus, the scope of such a search is limited to "'the arrestee's person and the area within his

immediate control . . . mean[ing] the area from within which he might gain possession of a weapon or destructible evidence.'"   United States v. Gandia, 424 F.3d 255, 261 (2d Cir. 2005) (quoting Chimel v. California, 395 U.S. 752, 763, 89 S. Ct. 2034, 2040, (1969)); see also, e.g., United States v. Williams, 568 F. App'x 25, 27 (2d Cir. 2014).

       As set forth above, Detectives Gengo and Ruscitto had probable cause to arrest Watkins on March 13 and May 1, 2013.  (See pages 14, 15 above.)  See also, e.g., Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014) (probable cause necessary for a lawful arrest exists when an officer "'has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested'").  Thus, each search was conducted incident to a lawful arrest.  Further, there is no dispute that on each date Watkins was arrested in her room at 730 Kelly Avenue.  (See pages 3, 5 above.)  Watkins' room was "so small," "like a one-stall bathroom" and lacked space to "move around."  (Ex. L: Watkins Dep. at 17, 22.)  The entirety of Watkins' room thus was within her reach, there is no additional evidence to suggest that the March 13 and May 1, 2013 searches of Watkins' room exceeded the area within her immediate control, and therefore any searches properly were incident to Watkins' arrest.  See, e.g., United States v. Watkins, No. 09-CR-331-A, 2014 WL 526636 at *4 (W.D.N.Y. Feb. 7, 2014); Morris v. City of N.Y., No. 12 Civ. 3959, 2013 WL 5781672 at *8 (E.D.N.Y. Oct. 28, 2013), aff'd, 604 F. App'x 22 (2d Cir. 2015).

       Watkins further asserts that incident to her arrest on May 1, 2013, Detectives Gengo and Ruscitto searched the hallway bathroom.  (See page 5 above; see also Watkins Dep. at 112.) While a common hallway bathroom likely was not within Watkins' immediate control, there is no evidence that Watkins had a legitimate expectation of privacy in it.  Thus, any search of the hallway bathroom does not rise to the level of a Fourth Amendment violation.  See, e.g., United States v.

Simmonds, No. 15-577, --- F. App'x----, 2016 WL 929736 at *5 (2d Cir. Mar. 11, 2016) ("We have held that a person does not have a reasonable expectation of privacy in the common areas of multi-unit buildings."); United States v. Gray, 283 F. App'x 871, 873 (2d Cir. 2008) (Plaintiff "did not have a privacy interest in the hallway because it was not subject to his exclusive control. The record indicates that [plaintiff] and his neighbor shared the hallway and both stored items in the common area."); United States v. Van Praagh, 14 Cr. 189, 2014 WL 4954162 at *3 (S.D.N.Y. Oct. 1, 2014) ("To establish a violation of his Fourth Amendment rights, a defendant bears the burden of demonstrating that at the time of the search he had a 'legitimate expectation of privacy' in the searched place or item." (quoting United States v. Paulino, 850 F.2d 93, 96 (2d Cir. 1988), cert. denied, 490 U.S. 1052, 109 S. Ct. 1967 (1989)));  United States v. Bartee, 13 Cr. 365, 2013 WL 6164339 at *5-6 (S.D.N.Y. Nov. 12, 2013).

Finally, while Watkins claims that because she was in her underwear during both searches she was "sexually uncomfortable" (see page 3 above), decisions in this Circuit have found searches conducted under similar circumstances reasonable.  See, e.g., United States v. Di Stefano, 555 F.2d 1094, 1101 (2d Cir. 1977) (reasonable for officer to accompany arrestee while she got dressed to "maintain a 'watchful eye' on her and to assure that she did not destroy evidence or procure a weapon"); Jackson v. Suffolk Cty., 87 F. Supp. 3d 386, 401 (E.D.N.Y. 2015) (reasonable to detain occupant in her "t-shirt and underwear" during search of premises); Brown v. City of N.Y., 12 Civ. 3146, 2014 WL 5089748 at *6 (S.D.N.Y. Sept. 30, 2014) ("The approximately ten-minute delay in which Plaintiff was naked or wearing underwear . . . while likely unpleasant for the Plaintiff, does not make the search unreasonable or unlawful.").[16/]

---

[16/]    Watkins' complaint that there was "no female officer present" during either search (Dkt. No.
(continued...)

Accordingly, to the extent Watkins raises an unlawful search claim, such claim is dismissed.

## V.      WATKINS' STATE LAW CLAIMS ARE DISMISSED

To the extent Watkins raises parallel false arrest and malicious prosecution claims under New York law, defendants argue that such claims must be dismissed for Watkins' failure to timely file a notice of claim and commence this action.  (Dkt. No. 54: Defs. Br. at 18-19.)

Under New York law, an aggrieved individual is required to submit a notice of claim and then bring suit against a municipality or its employees within one year and ninety days "after the happening of the event upon which the claim is based."  N.Y. Gen. Mun. Law § 50-i(1).  "Notice of claim requirements 'are construed strictly by New York state courts.'  Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action."  Hardy v. N.Y.C. Health & Hosp. Corp., 164 F.3d 789, 793-94 (2d Cir. 1999) (citations omitted); see also, e.g., Willis v. City of N.Y.,12 Civ. 5259, 2015 WL 556884 at *9 (S.D.N.Y. Feb. 9, 2015).  Defendants assert that Watkins did not file a notice of claim in connection with either arrest, and Watkins has presented no evidence to the contrary.  (Defs. Br. at 19.)[17]

Moreover, Watkins failed to timely commence this action.  Under New York law,

---

[16]      (...continued)
17: Am. Compl. § III(C)) is similarly unavailing, as "courts have repeatedly found that the fact that a pat-down search incident to arrest is conducted by an officer of the opposite sex of the arrestee does not, absent some additional evidence of improper conduct during the search, convert a lawful search incident to arrest into an unlawful one."  Stokes v. City of N.Y., No. 05-CV-0007, 2007 WL 1300983 at *12 n.9 (E.D.N.Y. May 3, 2007) (collecting cases).

[17]      There is no evidence to suggest that compliance with the notice of claim requirement was unnecessary in this case.  See, e.g., Hardee v. City of N.Y., 10 Civ. 7743, 2014 WL 4058065 at *8 (S.D.N.Y. Aug. 14, 2014) (if injuries are the result of "intentional wrongdoing or recklessness" New York's notice of claim requirement does not apply).

22

Watkins was required to bring suit for any state law claims arising from her May 1, 2013 arrest (the more recent of the two arrests) prior to July 30, 2014.  Watkins did not commence this action until September 16, 2014.  (Dkt. No. 1: Compl.)  Accordingly, to the extent Watkins raises state law claims, they are dismissed for her failure to comply with New York's statutory filing requirements.

## CONCLUSION[18]

For the reasons set forth above, defendants' summary judgment motion is GRANTED.  The Clerk of Court is directed to enter judgment accordingly and to close the case.

SO ORDERED.

Dated:        New York, New York
              July 11, 2016

                                              _____
                                              **Andrew J. Peck**
                                              United States Magistrate Judge

Copies to:    Nikita Watkins (Reg. & cert. mail)
              Counsel (ECF)

---

[18]    If Watkins requires copies of any of the cases reported only in Westlaw, she should request copies from opposing counsel.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009); SDNY-EDNY Local Civil Rule 7.2.